UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | ) | CCriminal No.10cr522 JM(CAB) |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Order |
| JOSE NUNEZ-BELTRAN, | ) | |
| Defendants. | ) | |

Defendant Jose Nunez-Beltran (Nunez) appeals from the judgment and commitment imposed by the magistrate judge after Nunez was found guilty of attempted illegal entry into the United States in violation of 8 U.S.C. § 1325(a)(1). The magistrate judge had original jurisdiction to conduct the trial under 28 U.S.C. § 636(a)(4) and 18 U.S.C. § 3401, and this court has review jurisdiction under 18 U.S.C. § 3402. Nunez has timely appealed.

**I.    Background**

On January 26, 2010, at 6:15 a.m., Customs and Border Protection Officer Edwin Selga (Officer Selga) was working in Vehicle Lane 24 at San Ysidro Port of Entry. (Trial transcipt "TT," 22:4). While taking declarations from a vehicle, Nunez appeared on Officer Selga's right-hand side, immediately to his right. (TT 26:3). Officer Selga did not see Nunez in his peripheral vision, and believes Nunez must have been running

10cr0522

because he came so fast to Officer Selga's vehicle lane.  (TT 26:13-15).  Officer Selga somewhat pushed Nunez and asked him, in Spanish, if he had documents.  (TT 26:21-25).  Then Nunez pushed Officer Selga because he was holding onto Nunez, and Officer Selga again asked, in Spanish, if Nunez had documents.  (TT 27-28:19-5).  Nunez then attempted to move away from Officer Selga, and Officer Selga grabbed him and pushed him towards Officer Selga's booth.  (TT 28:7-12).  After that, there was a brief struggle, during which Nunez attempted to run south, towards Mexico.  (TT 28-29:18-3).  Officer Selga pushed Nunez against a metal gate, after which Nunez stopped struggling.  (TT 29-30:20-4).  Officer Selga then called for assistance, and Officer Nelson Perez, along with a few other officers, came and handcuffed Nunez.  (TT 30:8-15 and 35:12-13).  Nunez was then taken to a security office.  (TT 31:1).

Around 7:30 a.m. the same day, Customs and Border Protection Officer Adriana Rosas-Carranza (Officer Rosas), interviewed Nunez.  (TT 45:16-18).  Nunez told Officer Rosas that he was a Mexican citizen, born in Sinaloa, Mexico and his parents were also born in Mexico (TT 52:14-25).  Nunez then said he did not possess any documents allowing him to legally enter the United States, and that he was going to San Diego to work.  (TT 53:6-24).  Nunez then said he thought it would be easy to get through the gate, but he was going to turn around and return to Mexico when he realized there was an officer in the booth.  (TT 54:11-16).  Officer Rosas searched for records of Nunez, but there was no criminal or immigration history.  (TT 64:21-24).

While screening Nunez at the Metropolitan Correction Center (MCC) in San Diego, Brujilio Camagay, a staff practitioner at MCC, diagnosed Nunez with heroin withdrawal, and designated him to be "detoxed."  (TT 118).  After that, Nunez was admitted to the Alvarado Parkway Institute, where Dr. Jorge Barrerra examined Nunez on January 28, 2010, and admitted him for mental illness and detoxification from heroin.  (TT 129-130).  During the examination, Nunez told Dr. Barrerra that he was born in Culiacan, Mexico.  (TT 140:15).

On March 3, 2010, two days before trial, Nunez made motions to dismiss the information for duplicity.  (Doc. 12).  The government responded on March 4, 2010, and issued a bill of particulars, which reduced the charging information to a violation of 8 U.S.C.§ 1325 (a)(1) and (a)(2), included in one count.  (Doc. 15 and 16).

The trial commenced on March 5, 2010.  (Doc. 20).  At trial, Nunez objected to the admission of Nunez's birth certificate into evidence because the certificate did not comply with Federal Rules of Evidence 902(3).  (TT 86:12-24).  The magistrate judge held that the certificate was admissible after the government submitted an apostille.  (TT 104:7-15).  At that time, Nunez moved for acquittal pursuant to the Federal Rules of Criminal

Procedure.  The magistrate judge granted the motion as to 8 U.S.C.§ 1325 (a)(2), but denied it as to (a)(1).  (TT 110). The magistrate judge found Nunez guilty of violating 8 U.S.C.§ 1325 (a)(1), attempted illegal entry.. (TBT 165).

## II.      Duplicity of the Charging Information

### A.      Legal Standard

Whether an indictment is duplicitous is a question of law reviewed de novo.  *See U.S. v. Martin*, 4 F.3d 757, 759 (9th Cir. 1993).  **"**Duplicity is the joining in a single count of two or more distinct and separate offenses." *U.S. v. UCO Oil Co.,*  546 F.2d 833, 835 (9th Cir. 1976)**.**  In reviewing an indictment for duplicity, the correct inquiry is not whether the evidence introduced at trial supports charging several crimes, but whether the "indictment itself can be read to charge only one violation in each count." *Id.* 4 F.3d at 759.  The court's decision not to dismiss an allegedly duplicitous indictment is reviewed de novo.  *See U.S. v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001).

### B.      Discussion

Nunez points to several cases illustrating the dangers inherent in duplicitous indictments: jury confusion, lack of notice to the defendant, difficulty in making evidentiary rulings, and prejudice to the defendant.  *See United States v. Aguilar,* 756 F.2d 1418 n.2 (9th Cir. 1985); *see also United States v. UCO Oil Co.,* 546 F.2d 833, 835 (9th Cir. 1976).  The primary concern raised by the 9th Circuit in many cases is the danger that "a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense.**"**  *United States v. Ramirez*, 273 F.3d 903, 913 (9th Cir. 2001) (quoting *United States v. UCO Oil Co.* 546 F.2d 833, 835).

Originally, the government's charging document included all five possible charges listed under 8 U.S.C.§ 1325 (a), including entering, or attempting to enter the United States at a time or place other than designated by immigration officers, eluding examination or inspection by immigration officers, and attempting to enter or

10cr0522

1  entering the United States by a willfully false or misleading representation or the willful concealment of a

2  material fact.  The government included all of these charges in a single count.  On March 4, 2010, the government

3  issued a bill of particulars which reduced the charges against Nunez to attempted entry and eluding examination.

4  These were also in a single count.

5      The government cites *United States v. Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009) to show that

6  charging conjunctively two subsections of a statute is appropriate when the charges are merely different means of

7  committing a single crime.  8 U.S.C.§ 1325 (a)(1) and (2), however, list different crimes.  Although the two

8  crimes overlap, and are likely to occur concurrently, they contain different elements and can be violated

9  independently.  In other words, it is possible to elude examination without attempting to enter the United States

10  and it is also possible to attempt to enter the United States without eluding examination, as the magistrate judge

11  found to be the case here.  Therefore, charging both of these crimes in a single count creates the possibility that a

12  jury could find the defendant guilty without unanimity, which is precisely the danger posed by a duplicitous

13  indictment.

14      Although the charging information was duplicitous, the government properly remedied this error.  In

15  *United States v. Ramirez*, 273 F.3d 903, the court held that a duplicitous indictment could be properly prosecuted

16  when "the court provides an instruction requiring all members of the jury to agree as to which of the distinct

17  charges the defendant actually committed."  *Id* at 915.  In this case, the dangers of a duplicitous indictment were

18  eliminated because the case was tried by a judge, not a jury.  It is clear that the magistrate judge was able to

19  delineate the charges, as demanded by the court in *Ramirez*. This is shown by the fact that she granted Nunez's

20  Rule 29 motion for the offense under 8 U.S.C. § 1325(a)(2) but denied the same motion for the offense under 8

21  U.S.C. § 1325(a)(1).

22      Nunez points to some other dangers of a duplicitous charging information, including the inability to sever

23  counts and contest the admissibility of evidence as to one count or another.  This would create  issues in some

24  cases, but this case is not one of them.  Because this was a bench trial, there was no issue of prejudicial or

25  improperly admitted evidence influencing the jury, and the magistrate judge dismissed the 8 U.S.C. § 1325(a)(2)

26  charge.

27  / / /

28  / / /

4

**III.**     **Admissibility of the Birth Certificate**

**A.**     **Legal Standard**

A lower court's decision to admit evidence is reviewed for an abuse of discretion.  *See U.S. v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004).  Such rulings will be reversed for an abuse of discretion only if any nonconstitutional error more likely than not affected the verdict.  *See U.S. v. Edwards*, 235 F.3d 1173, 1178 (9th Cir. 2000).

Federal Rule of Evidence 902(3) governs the authenticity of evidence consisting of foreign public documents.  Rule 902(3) creates two requirements.  The first is that "the document must purport to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make that execution or attestation." The second is that "the document must be accompanied by a 'final certification.'" Fed. R. Evid. 902(3).

Federal Rule of Criminal Procedure 27 applies Federal Rule of Civil Procedure 44 to criminal cases when proving an official record.  Federal Rule of Civil Procedure 44(a)(2)(A)(ii) allows for "a certification under a treaty or convention to which the United States and the country where the record is located are parties," in place of the "final certification" required by Federal Rules of Evidence 902(3).  In this case the United States and Mexico are both party to the Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents of October 5, 1961.  In establishing authenticity, the Hague Convention requires only that an apostille be attached to a document.  A model apostille is annexed to the Convention.

**B.**     **Discussion**

It is undisputed that the government meets the first requirement of Federal Rule of Evidence 902(3).  Nunez argues that the government has failed to meet the second requirement, the accompanying "final certifica-tion."  The government correctly states that under the Hague Convention an apostille can be used in place of the final certification demanded by Rule 902(3).  As Nunez notes, and the government fails to address, the Hague Convention requires that an apostille identify itself as such and includes a serial number linked to a central

10cr0522

archive in the issuing state for verification purposes.  Article 4 of the Hague Convention governs the form that the apostille must take, and states "[t]he certificate referred to in the first paragraph of Article 3 shall be placed on the document itself or on an "allonge[1]"; it shall be in the form of the model annexed to the present Convention." Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents, October 4, 1961, 527 U.N.T.S. 189.  Article 7 lists the requirements signatories to the convention must comply with in keeping records, and says "[e]ach of the authorities designated in accordance with Article 6 shall keep a register or card index in which it shall record the certificates issued, specifying:

> a)  the number and date of the certificate,
>
> b)  the name of the person signing the public document and the capacity in which he has acted, or in the case of unsigned documents, the name of the authority which has affixed the seal or stamp.

Id.

The seal attached to the birth certificate proffered by the government does not follow either of these provisions of the convention.  It is unclear from the record whether the government is offering the Attestation of Authenticity of Official Records attached to Nunez's birth certificate as an apostille, or whether there was a different apostille introduced at trial.  As shown above, the attached Attestation does not meet the Hague Convention's requirements for an apostille because it does not identify itself as an apostille in accordance with Article 4 and does not have a serial number in accordance with Article 7.  Regardless, any error in admitting the birth certificate should not result in reversal of the conviction as for the reasons discussed below.

## IV.    Sufficiency of the Evidence to Prove Alienage

### A.      Legal Standard

Claims of insufficient evidence and a lower court's denial of a motion for acquittal are both reviewed de novo.  40 F.3d 1055, 1057 (9th Cir. 1994) (citation omitted).  There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

---

[1] See Black's Law Dictionary (8th ed. 2004). "Allonge. A slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further endorsements when the original paper is filled with endorsements."

1  the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319

2  (1979).

3      **B.      Discussion**

4

5      In *United States v. Lopez-Alvarez*, 970 F.3d 1330, 1333 (9th Cir. 1992), the court held that the govern-

6  ment "must introduce independent evidence tending to establish the trustworthiness of the admissions."  The

7  government introduced evidence corroborating Nunez's admissions in the form of his conduct leading up to his

8  arrest and his independent admissions to Alvarado Parkway Institute personnel. Even without a copy of the birth

9  certificate, this evidence, in conjunction with Nunez's statements to the immigration officers, was sufficient

10  corroborating evidence of Nunez's alienage.

11      Nunez relies on two cases involving aliens with prior deportation orders, both of which involved

12  convictions based on admissions of alienage corroborated by a prior deportation order.  *See United States v.*

13  *Hernandez*, 105 F.3d 1330 (9th Cir. 1997); *see also United States v. Sotelo*, 109 F.3d 1446 (9th Cir. 1997).

14  Nunez claims these two cases establish that a prior deportation order is necessary in this type of case and that

15  "mode of entry" evidence cannot satisfy the requirement of evidence corroborating an admission.  Actually, those

16  two cases do not stand for the proposition advanced by Nunez; they merely decline to rule on whether mode of

17  entry can, by itself, serve as sufficient corroboration.  *See United States v. Hernandez* at 1333; *see also United*

18  *States v. Sotelo* at 1449.  In fact, the Ninth Circuit has held that a defendant's mode of entry can be sufficient

19  corroboration, doing so in a case in which the defendant scaled two border walls and concealed himself in brush

20  on the U.S. side of the border.  *United States v. Garcia Villegas* 575 F.3d 949 (9th Cir. 2009).  Here, evidence of

21  Nunez running through the vehicle lane and attempting to flee towards Mexico after being stopped by an

22  immigration officer, as well as his subsequent statements to hospital officials, constituted sufficient corroboration

23  for a rational factfinder to find Nunez guilty beyond a reasonable doubt.

24      **AFFIRMED.**

25      IT IS SO ORDERED.

26  DATED:  July 26, 2010

27      _____

28      Hon. Jeffrey T. Miller
        United States District Judge

7

10cr0522